## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>JOHN F. ASHE, JR., DIANNE ASHE, )<br>and WAYNE D. RAETHER d/b/a )<br>COUNTY LINE GRADING, )<br><br>Defendants. ) | Civil Action No. 13-cv-246 |

### CONSENT DECREE

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed the Complaint herein contemporaneously with the lodging of this Consent Decree, against Defendants John F. Ashe, Jr., Dianne Ashe and Wayne D. Raether d/b/a County Line Grading (collectively, "Defendants"), alleging that Defendants violated Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a);

WHEREAS, Defendants John F. Ashe, Jr. and Dianne Ashe are the owners of property consisting of approximately 60 acres bordered on the west by Hamilton Falls Road situated in the northwest quarter of Section 11, Township 27 North, Range 5 West, Town of Wilson, Eau Claire County, State of Wisconsin (hereinafter referred to as the "Site" and as depicted in Appendix A hereto);

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by discharging dredged or fill material and/or controlling and directing the discharge of fill material

into waters of the United States on approximately 3.25 acres on the Site (hereinafter referred to as "Filled Areas" and described and depicted on Appendix B hereto), without authorization by the United States Department of the Army Corps of Engineers (the "Corps");

WHEREAS, the Complaint seeks to: (1) require Defendants to implement a Restoration Plan approved by EPA; (2) award the United States costs and disbursements; and (3) obtain such other relief as the Court may deem just and proper;

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of the United States' claims under the CWA set forth in the Complaint regarding the Site;

WHEREAS, the United States and Defendants agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the United States' claims under the CWA against Defendants in this case; and

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the United States' claims against Defendants in this case, and that this Consent Decree adequately protects the public interest in accordance with the CWA and all other applicable federal law.

THEREFORE, before the taking of any testimony upon the pleadings, without further adjudication of any issue of fact or law, and upon consent of the parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 28 U.S.C. §§ 1331 and 1345, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

2. Venue is proper in the Western District of Wisconsin pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b), because the Defendant Raether resides in and conducts business in this District, the subject property is located in this District, and the causes of action alleged herein arose in this District.

3. The Complaint states claims upon which relief can be granted pursuant to Section 301 of the CWA, 33 U.S.C. §§ 1311.

## II. APPLICABILITY

4. The obligations of this Consent Decree shall apply to and be binding upon Defendants, their officers, directors, agents, employees and servants, and their successors and assigns and any person, firm, association or corporation who is, or will be, acting in concert or participation with any of the Defendants whether or not such person has notice of this Consent Decree. In any action to enforce this Consent Decree against a Defendant, the Defendant shall not raise as a defense the failure of any of its officers, directors, agents, employees, successors or assigns or any person, firm or corporation acting in concert or participation with the Defendant, to take any actions necessary to comply with the provisions hereof.

5. The transfer of ownership or other interest in the Site shall not alter or relieve Defendants of their obligation to comply with all of the terms of this Consent Decree. At least fifteen (15) days prior to the transfer of ownership or other interest in the Site, the party making such transfer shall provide written notice and a true copy of this Consent Decree to its successors in interest and shall simultaneously notify EPA and the United States Department of Justice at the addresses specified in Section VIII below that such notice has been given. As a condition to any such transfer, the Defendant making the transfer shall reserve all rights necessary to comply with the terms of this Consent Decree.

### III.  SCOPE OF THIS CONSENT DECREE

6.      This Consent Decree shall constitute a complete and final settlement of all civil claims alleged in the Complaint against the Defendants under CWA Sections 301, 309 and 404 concerning the Site through the date of lodging of the Consent Decree.

7.      It is the express purpose of the parties in entering this Consent Decree to further the objectives set forth in CWA Section 101, 33 U.S.C. § 1251.  All obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Defendants to achieve and maintain full compliance with, and to further the purposes of, the CWA.

8.      Unless otherwise noted herein, the obligations under the Consent Decree are joint and several.

9.      Except as in accordance with this Consent Decree, Defendants and Defendants' agents, successors and assigns are enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and its implementing regulations.

10.     This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. § 1342 or § 1344, or any other law.  Except as provided herein, nothing in this Consent Decree shall limit the ability of the United States Army Corps of Engineers to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).

11.     This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with any applicable federal, state, or local law, regulation or permit.

12.     This Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

13.     The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law.

14.     Except for Paragraphs 1-3 above, nothing in this Consent Decree shall constitute an admission of fact or law by any party.

IV.  SPECIFIC PROVISIONS

15.     RESTORATION OF THE WETLANDS ON SITE

a.     Defendants shall perform the following work at the Site:

i.     After providing notice as required in subparagraph b. below, Defendants shall dewater the Site in stages by breaching the impoundment on the Site in progressive stages at a rate to minimize surges and sedimentation in the downstream channel.  This activity will continue until the water level immediately above the breached dike is at the level of the stream channel below the impoundment.  If necessary, Defendants shall employ a pump to remove any remaining ponded water from the excavated area behind the dike.

ii.     After providing notice as required in subparagraph b. below, Defendants shall return all previously dredged material back into the excavated areas, including the fill material constituting the dike itself.  Defendants shall take care, to the extent possible, to differentiate between lighter sandy and blacker mucky soils, placing the lighter sandy soils below the blacker mucky soils.  Grade controls are indicated in Appendix C attached hereto.

iii.     Within the first growing season after entry of the Consent Decree and after providing notice as required in subparagraph b. below, Defendants shall recreate the stream channel through the center of the ponded area upstream of the impoundment with the dimensions of the stream channel averaging a width of five feet and a depth of at least one foot. The grade of the stream banks shall not exceed 45 degrees from horizontal. Stream banks and bottom shall be stabilized with biodegradable burlap erosion control fabric properly secured into the ground using appropriate staking. The burlap shall cover the ground surface from the top of the left bank through the stream channel to the top of the right bank. Adjacent strip edges shall overlap each other by at least six inches. The upgrade end of each burlap blanket shall be firmly buried at least four inches vertically. All overlaps in the burlap blanket shall be staked flush to the ground at intervals of no more than every three feet. Defendants John F. Ashe, Jr. and Dianne Ashe shall maintain this erosion control blanket through the first growing year and until seeded vegetation is firmly established.

iv.     Defendants John F. Ashe, Jr. and Dianne Ashe shall seed all areas disturbed by the restoration using a quick growing cover crop seeded at a rate of 40 pounds per acre. Acceptable cover crops include oats (*Avena sativa*), rye (*Lolium multiflorum* or *L. perenne*) and wheat (*Triticum aestivum*). The seeds shall be raked or drilled into the soil and then, with the exception of the stream banks and channel, covered with weed-free straw mulch crimped into the soil surface at a rate of 2000 pounds per acre. Seeding shall commence within 48 hours of EPA's written approval of the site grades.

v.     Defendants John F. Ashe, Jr. and Dianne Ashe shall monitor the site restoration for three full growing seasons, specifically for 2014, 2015 and 2016. A full growing season commences after the spring emergence of vegetation and continues through to fall

6

senescence. Monitoring shall include a site inspection during June of the year of monitoring, noting stream channel stability, the presence of non-native species and the state of vegetation regrowth. Monitoring will also include photographs taken from north, south, east and west perspectives of the former impoundment on the site sufficient to assess the restoration. Similarly, Defendants John F. Ashe, Jr. and Dianne Ashe shall take one photograph of the stream channel taken from the site of the former impoundment facing upstream and another from the furthest upstream extent of the pre-restoration ponding facing downstream sufficient to assess the restoration. Furthermore, Defendants John F. Ashe, Jr. and Dianne Ashe shall also take one photograph of the upstream road restoration facing south and another from the upstream road restoration facing north, sufficient to assess the road restoration north and south of its crossing of the unnamed tributary. Defendants John F. Ashe, Jr. and Dianne Ashe shall submit an annual written report containing the monitoring information and photographs to the government representatives at the addresses provided in Paragraph 25 postmarked by September 1 of the reporting year.

vi.     Defendants John F. Ashe, Jr. and Dianne Ashe shall use best efforts, beginning in 2014 and continuing through the year 2016, to annually eradicate non-native or invasive plant species which emerge in the restored areas, especially reed canary grass (*Phalaris arundinacea*). Defendants John F. Ashe, Jr. and Dianne Ashe may use herbicides appropriate for grasses and wet or aquatic areas to eradicate these plants.

vii.    After providing notice as required in subparagraph b. below, Defendants John F. Ashe, Jr. and Dianne Ashe shall remove all fill material and culverts from approximately 180 feet of the road that crosses the wetland and stream channel approximately 920 feet upstream of the impoundment. If present, a government representative will advise on marking

the north and south edges of the road fill prior to removal of the fill; otherwise, EPA estimates that 110 feet of the road base is south of the centerline of the stream crossing and 70 feet of the road base is north of the centerline of the stream crossing. After fill removal, the original surface shall be loosened or ripped to a depth of six inches and seeded with the erosion control cover crop and strawed in the manner and at the rate noted in subparagraph iv, above.

        viii.    Defendants shall use only tracked machinery in the restoration activities.

        ix.    By the end of the first growing season after the entry of this Consent Decree, Defendants John F. Ashe, Jr. and Dianne Ashe shall submit to the government representatives specified in Paragraph 25 a certification that Defendants John F. Ashe, Jr. and Dianne Ashe have restored the site grades as nearly as possible to original conditions and contours, seeded the site and applied erosion control measures. This certification shall include photographs or videotape and an "as built" survey drawing providing one foot contour topographic information across the excavated area upstream of the impoundment dike, five spot elevations evenly spaced along the footprint of the impoundment dike and three spot elevations evenly spaced along the stream channel bottom and the upstream road restoration documenting the completed restoration activities throughout the site. All site dimensions, both vertical and horizontal, shall be provided by a land surveyor licensed in the State of Wisconsin. By December 31, 2016, Defendants John F. Ashe Jr. and Dianne Ashe shall submit to the government representatives specified in Paragraph 25 a final certification that they have completed monitoring and management activities at the site.

    b.    Defendants shall provide at least seven days verbal notice to the EPA representatives specified in Paragraph 25 prior to initiation of any earth-moving activities required in this Paragraph 15. Furthermore, Defendants John F. Ashe, Jr. and Dianne Ashe shall

allow access by government representatives to the site to observe any earth-moving activities. Additionally, through calendar year 2016, Defendants John F. Ashe, Jr. and Dianne Ashe shall allow government representatives to access and observe the site for any reason with at least 24 hours verbal notice to Defendants John F. Ashe, Jr. and Dianne Ashe.

      c.      After completion of the initial restoration, as delineated in subparagraphs i to iii and vii, above, Defendants shall not mow, cut, clear, cultivate, dredge, excavate, farm, fill, de-water, drain or otherwise disturb the restoration except upon consultation with and approval of the EPA representatives.

## V.  NOTICES AND OTHER SUBMISSIONS

16.      Within 30 days after the deadline for completing earth-moving, seeding, monitoring or management tasks set forth in Paragraph 15 of this Consent Decree, Defendants John F. Ashe, Jr. and Dianne Ashe shall provide the United States with written notice, at the addresses specified in Section VIII of this Consent Decree, of whether or not that task has been completed.

17.      With regard to the notice requirements specified in Paragraph 16, if the required task has been completed, the notice shall specify the date when the task was completed, and enclose a copy of any document sent, transferred, conveyed and/or filed in connection with the completion of the task.  If the required task has not been completed, the notice shall explain the reasons for any delay in completing the task beyond the scheduled time for such completion required by the Consent Decree.

18.      In all written notices, documents or reports submitted to the United States pursuant to this Consent Decree, Defendants shall certify such notices, documents and reports as follows:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## VI. STIPULATED PENALTIES

19.     After entry of this Consent Decree, if any Defendant fails to timely fulfill any requirement of the Consent Decree specific to that Defendant, unless caused by a Force Majeure event as defined herein, that Defendant shall pay a stipulated penalty to the United States for each violation of each requirement of this Consent Decree as follows:

|   |   |   |
|---|---|---|
| A. | For Day 1 up to and including Day 30 of non-compliance | $1,000 per day |
| B. | For Day 31 up to and including Day 60 of non-compliance | $2,000 per day |
| C. | For Day 61 and beyond of non- compliance | $3,000 per day |

Such payments shall be made without demand by the United States on or before the last day of the month following the month in which the stipulated penalty accrued. Notwithstanding the foregoing, the United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

20.     In the event that a stipulated penalty payment is applicable and not made on time, interest will be charged in accordance with the statutory judgment interest rate provided for in 28 U.S.C. § 1961. The interest shall be computed daily from the time the payment is due until the date the payment is made. The interest shall also be compounded annually.

21.     Defendants shall make any payment of a stipulated penalty by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing  EPA Region 5 and the DOJ case number 90-5-1-1-19322.  Payment shall be made in accordance with instructions provided to the Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Western District of Wisconsin.  Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.  Further, upon payment of any stipulated penalties, Defendants shall provide written notice, at the addresses specified in Section IX of this Decree.

## VII.  FORCE MAJEURE

22.     Notwithstanding the provisions in Section VI hereto, if the action or inaction of a third party or other circumstances occur beyond Defendants control that delays the timely performance by Defendants of its obligations under this Consent Decree, Defendants shall notify in writing EPA and the Department of Justice, at the addresses stated in Section VIII below, within fourteen days (14) of the date when Defendants first learned of the circumstances, or within fourteen days (14) of the date when Defendants should have known of the event by the exercise of due diligence.  The notice shall describe in detail:  the event or events which have prevented the Defendants from timely performing its obligations, the anticipated length of time the delay may persist, the measures taken or intended to be taken by Defendants to prevent or minimize the delay, and the timetable by which those measures will be implemented.  Failure to comply with the notice requirements of this section shall constitute a waiver of Defendants' right to obtain an extension of time under Paragraph 23 below.

23.    If the United States agrees that the Defendants' ability to timely perform any of its obligations under this Consent Decree has been or will be caused by circumstances beyond the control of the Defendants, and that Defendants could not have reasonably prevented such circumstances, the time for performance of such provision shall be extended in writing by EPA for a period equal to the actual delay resulting from such circumstances, and stipulated penalties shall not be due for the delay.

24.    The following shall not serve as a basis for changes in this Consent Decree or extensions of time for the performance of its requirements: changes in Defendants' financial circumstances; unanticipated or increased costs or expenses associated with the implementation of actions required by this Consent Decree.

## VIII.  ADDRESSES

25.    All notices and communications required under this Consent Decree shall be made to the parties through each of the following persons and addresses:

a.    TO EPA:

(1)    Robert Guenther
       Associate Regional Counsel
       United States Environmental Protection Agency
       Region 5
       77 West Jackson Blvd. (C-14J)
       Chicago, IL 60604
       (312) 886-0566

(2)    Greg Carlson
       United States Environmental Protection Agency
       Region 5
       77 West Jackson Blvd.
       Chicago, IL 60604
       (312) 886-0124

b.    TO THE UNITED STATES DEPARTMENT OF JUSTICE

Laurel A. Bedig
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0331

c.    TO DEFENDANTS:

John F. Ashe, Jr., and Dianne Ashe
258 Bobwhite Lane
Bloomingdale, Illinois 60108-1313

With a copy to:
Nicholas Dizonno, Esq.
Law Offices of Nicholas Dizonno
1235 Pratt Blvd.
Elk Grove Village, IL 60007-5708
(312) 636-7344

Wayne D. Raether d/b/a/ County Line Grading
W16999 Miller Avenue
Gilman, Wisconsin 54433-9624

With a copy to:
Timm P. Speerschneider, Esq.
DeWitt Ross & Stevens S.C.
Two East Mifflin St.
Suite 600
Madison, WI 53703-2865
(608) 252-9319

## IX.  COSTS OF SUIT

26.    Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.  Should Defendants subsequently be determined by the Court to have violated the terms or conditions of this Consent Decree, Defendants shall be liable for any costs or attorneys' fees incurred by the United States in any action against Defendants for noncompliance with or enforcement of this Consent Decree.

13

## X.  PUBLIC COMMENT

27.     The parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and opportunity for comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  The Defendants agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Consent Decree.

## XI.  CONTINUING JURISDICTION OF THE COURT

28.     This Court shall retain jurisdiction over this action in order to enforce or modify the Consent Decree consistent with applicable law or to resolve all disputes arising hereunder as may be necessary or appropriate for construction or execution of this Consent Decree.  During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the Consent Decree.

## XII.  MODIFICATION

29.     Upon its entry by the Court, this Consent Decree shall have the force and effect of a final judgment.  Any modification of this Consent Decree shall be in writing, and shall not take effect unless signed by both the United States and the Defendants and approved by the Court.

## XIII.  TERMINATION

30.     This Consent Decree may be terminated by either of the following:

a.      Defendants and the United States may at any time make a joint motion to the Court for termination of this Decree or any portion of it; or

14

b.      Defendants may make a unilateral motion to the Court to terminate this Decree

after each of the following has occurred:

1.      Defendants have obtained and maintained compliance with all provisions of this
Consent Decree for 12 consecutive months;

2.      Defendants have paid all penalties and other monetary obligations hereunder and
no penalties or other monetary obligations are outstanding or owed to the United
States;

3.      Defendants have certified compliance pursuant to subparagraphs 1 and 2 above to
the Court and all Parties; and

4.      Within 45 days of receiving such certification from the Defendants, EPA has not
contested in writing that such compliance has been achieved.  If EPA disputes
Defendants' full compliance, this Consent Decree shall remain in effect pending
resolution of the dispute by the parties or the Court.

**IT IS SO ORDERED.**

Dated and entered this *14th* day of *June* 2013.

_____
United States District Judge

ON BEHALF OF THE UNITED STATES:

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

_____            Dated: *4/10/2013*
LAUREL A. BEDIG
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044

Dated: 2-11-13

SUSAN HEDMAN
Regional Administrator
U.S. Environmental Protection Agency
Region 5
Chicago, Illinois


Dated: 1/29/2013

ROBERT S. GUENTHER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
Chicago, Illinois


Dated: 2/26/13

MARK POLLINS, Director
Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


Dated: 2/20/2013

ROBERT D. FENTRESS, Attorney-Advisor
Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

FOR DEFENDANTS JOHN F. ASHE, JR. and DIANNE ASHE:

Dated: 1-25-13

NICHOLAS DIZONNO, ESQ.
Law Offices of Nicholas Dizonno
1235 Pratt Blvd.
Elk Grove Village, IL 60007-5301

17

FOR DEFENDANT WAYNE D. RAETHER D/B/A/ COUNTY LINE GRADING

Dated: 1/25/13

TIMM P. SPEERSCHNEIDER, ESQ.
DeWitt Ross and Stevens S.C.
Two East Mifflin St.
Suite 600
Madison, WI 53703-2865

18

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C









